IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, ex rel. Michael K. Drakeford, M.D., | ) ) C/A No. 3:05-2858-MBS |
| Plaintiff, | ) ) ) |
| vs. | ) ) **JURY INSTRUCTIONS** |
| Tuomey d/b/a Tuomey Healthcare System, Inc., | ) ) ) ) |
| Defendant. | ) ) |

### DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW

    Members of the jury, now that you have heard all the evidence and the arguments of the lawyers, it is my duty to instruct you on the law which applies to this case.  These instructions will be in three parts:  first, the instructions on general rules that define and control the jury's duties; second, the instructions that state the rules of law you must apply; and third, some rules for your deliberations.

    It is your duty to find the facts from all the evidence in the case.  To those facts you must apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not.  You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you and according to the law.  You will recall that you took an oath promising to do so at the beginning of the trial.

    In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return -- that is a matter entirely for you to decide.

### BURDEN OF PROOF

    At the beginning of the case, I told you that Plaintiff United States of America, ex rel. Michael K. Drakeford, M.D., which I hereinafter will refer to as "the government," has the burden of proving its case by a preponderance of the evidence.  That means that the government must produce evidence which, when considered in light of all the facts, leads you to believe that what it claims is more likely true than not.  To put it differently, if you were to put the evidence of

Defendant Tuomey d/b/a Tuomey Healthcare System, Inc., which I will hereinafter refer to as Tuomey, and the evidence of the government on opposite sides of the scales, the government would have to make the scales tip slightly to the side of the government. If the government fails to meet this burden, the verdict must be for Tuomey.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That is a stricter standard, that is, it requires more proof than a preponderance of evidence. The reasonable doubt standard does not apply to a civil case and you should therefore put it out of your mind.

To establish a fact by a "preponderance of the evidence" means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

Now, as you will hear later in my instructions, Tuomey has the burden to prove certain matters as well, and it, too, must prove those matters by a preponderance of the evidence. Tuomey has the burden of proving affirmative defenses by a preponderance of the evidence. An affirmative defense is Tuomey's assertion raising new facts and arguments that, if true, will defeat the government's claims. If Tuomey fails to meet its burden on an affirmative defense, then the affirmative defense will not bar the government's claim.

## EVIDENCE

The evidence from which you are to decide what the facts are consists of:

(1)  the sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness;
(2)  the exhibits which have been received into evidence; and
(3)  any facts to which all the lawyers have agreed or stipulated or that I instruct you to find.

During the trial, you have heard certain audio recordings. You have also been shown transcripts of those recordings to help you identify speakers and to help you listen to the recordings. As I stated previously, please understand that the recording itself and not the transcript is the evidence of what was said. Differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript, so you should rely on what you hear rather than what you read, if you think there is a difference.

## WHAT IS NOT EVIDENCE

Certain things are not evidence and you may not consider them in deciding what the facts are. I will list them for you:

(1) arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, if testimony or exhibits have been received only for a limited purpose, you must follow the limiting instructions I have given.

(4) anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## TRANSCRIPTS

You will notice that a complete record of the trial and all of the testimony is being made by the Court Reporter; but you should not expect to have typewritten transcripts of the trial available to you during your deliberations.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is indirect evidence, that is, proof of a chain of facts from which you could find that another fact exists, even though it has not been proved directly. You are entitled to consider both kinds of evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

It is for you to decide whether a fact has been proven by direct or circumstantial evidence. In making that decision, you must consider all the evidence in the light of reason, common sense, and experience.

3

## CREDIBILITY OF WITNESSES

In deciding what the facts are, you must consider all the evidence. In doing this, you must decide which testimony to believe and which testimony not to believe. You may disbelieve all or any part of any witness's testimony. In making that decision, you may take into account a number of factors including the following:

(1) was the witness able to see, or hear, or know the things about which that witness testified?

(2) how well was the witness able to recall and describe those things?

(3) what was the witness's manner while testifying?

(4) did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

(5) how reasonable was the witness's testimony considered in light of all the evidence in the case?

(6) was the witness's testimony contradicted by what that witness had said or done at another time, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider therefore whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

These are some of the factors you may consider in deciding whether to believe testimony.

## EXPERT TESTIMONY

You have heard testimony from persons described as experts. Persons who, by education and experience, have become expert in some field may state their opinion on matters in that field and may also state their reasons for the opinion.

Expert opinion testimony should be judged just as any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## DEPOSITION TESTIMONY

During the trial, testimony was presented to you through a deposition or other prior sworn

testimony. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, that witness's testimony may be presented, under oath, in the form of a deposition. Deposition testimony and other prior sworn testimony are entitled to the same consideration and is to be weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

## SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries have been shown to you in order to help explain the facts disclosed by the books, records, and other documents which are in evidence in the case. Such charts or summaries are used for convenience. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

## CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries have been received into evidence to illustrate facts brought out in the testimony of some witnesses. Charts and summaries may be used to prove the content of voluminous writing that cannot be conveniently examined in court. Charts and summaries are only as good as the underlying evidence that supports them. You should therefore give them only such weight as you think the underlying evidence deserves.

## NOTE-TAKING

Some of you have taken notes during the trial. Remember that the notes are for your own personal use. They are not to be given or read to anyone else and they are not to be used in place of your memory.

## JUROR'S DUTY TO BE IMPARTIAL

As I told you previously, you are to perform your duty without bias or prejudice to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as I give it to you, and reach a just verdict, regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal worth and equal standing in the community. The fact that Plaintiff is the United States of America, Relator is an individual, and Defendant is a corporation must not enter into or affect your verdict. All persons, including individuals and organizations, stand equal before the law and are to be dealt with as equals in a court of justice. Sympathy for any party, or prejudice against any party, shall play no part in your deliberations or your decision.

INCONSISTENT PRIOR SWORN STATEMENTS

Evidence that a person testifying made a statement under oath at an earlier deposition that is inconsistent with the witness's testimony at trial may be considered as proof of the truth of the earlier statement, as well as for purposes of judging the credibility of the person as a witness.

I will now briefly summarize the allegations of the case and then instruct you on the specific rules of law that apply in this case.

************

The Medicare program is a federal health care program that pays doctors and hospitals for health care services that they provide to people over 65 and certain other people who are eligible for Medicare benefits. Medicare generally covers 80% of allowable hospital outpatient charges. The Stark Law is a part of the Medicare Act that deals with financial relationship between hospitals and doctors.

The Stark Law prohibits physicians who have a financial relationship with a hospital from making a referral to that hospital for the furnishing of certain designated health services for which payment otherwise may be made by United States under the Medicare program. A hospital may not submit for payment a Medicare claim for services rendered pursuant to a prohibited referral. This is true even if the service otherwise properly was reimbursable under Medicare. There are certain financial relationships that comprise exceptions to the Stark Law. Two that are relevant in this case are the bona fide employment agreement exception and the indirect compensation exception.

The government alleges that Tuomey entered into compensation arrangements with certain physicians that violated the Stark Law. The False Claims Act is a statutory scheme designed to discourage fraud against the federal government. The False Claims Act authorizes the United States to recover damages caused by false or fraudulent claims for money or property of the United States. Therefore, the government seeks relief under the False Claims Act for Tuomey's alleged violations of the Stark Law.

The False Claims Act allows a private citizen to bring an action in the name of the United States Government against any person who allegedly violates the False Claims Act. The private citizen who brings the action is called a relator and these cases are known as qui tam actions. In this case, Dr. Michael Drakeford initially brought this case, and he is the relator.

After the case is filed by the relator, the United States has the opportunity to investigate the allegations. If it so chooses, the United States may take over the case and assume the primary responsibility for prosecuting it. The government has done so in this case, and while the relator is still a party, the government is the party primarily responsible for litigating this case.

The government alleges that, beginning on or about January 1, 2005, and for some time after that, Tuomey presented false claims to the United States by submitting Medicare claims in violation of the Stark Law. Thus, the government also contends that Tuomey knowingly presented false and fraudulent claims for payment or approval to the United States in violation of the False Claims Act, including claims for reimbursement for services rendered to patients who were referred by physicians with whom Tuomey had entered into financial relationships in violation of the Stark Law. Tuomey denies the government's allegations and contends that the contracts at issue meet an applicable exception. Tuomey also contends that, if an exception does not apply and if there is a violation of the False Claims Act, it should not be held liable because it relied on the advice of counsel.

For purposes of this case, the first step in determining whether the Stark Law has been violated is to determine whether Tuomey's contracts with the physicians in this case are indirect compensation arrangements as defined in the Stark Law or its Regulations. It is the government's burden of proof to establish that these contracts meet the definition of an indirect compensation arrangement. If you find that the contracts do not meet the definition of an indirect compensation arrangement, the Stark law does not apply and you need to deliberate no further.

If you find the contracts meet the definition of an indirect compensation arrangement, the second step in your inquiry is to determine whether the Tuomey contracts meet an applicable exception. It is Tuomey's burden of proof to establish that the contracts meet the indirect compensation exception or bona fide employment exception. If you find the contracts meet either of these exceptions, you need deliberate no further.

If you do not find that an exception applies, and that as a result the Stark Law has been violated, you next must determine whether Tuomey has violated the False Claims Act. It is the government's burden of proof to establish that Tuomey violated the False Claims Act. If you find the government has not met its burden of proof regarding the False Claims Act, you need deliberate no further. If you find that the government has met its burden of proof regarding the False Claims Act, you next must consider Tuomey's affirmative defense of advice of counsel. It is Tuomey's burden of proof to establish its defense of reliance on the advice of counsel. If you find that Tuomey has met its burden of proof, you must find in favor of Tuomey. If you find Tuomey has not met its burden of proof, you must find in favor of the government. If you find in favor of the government, you will next need to determine an amount of damages, as I will instruct you later in these jury charges.

I now will instruct you more fully on what the government must prove and what Tuomey must prove, as well as some definitions of terms utilized in the Stark Law and False Claims Act.

### THE STARK LAW

As I mentioned earlier, if a physician has a financial relationship with an entity, such as a compensation arrangement between the physician and the entity, then the Stark Law makes it unlawful for the physician to make a referral to the entity for the furnishing of designated health

services for which payment otherwise may be made by Medicare. The Stark Law also makes it unlawful for the entity to present or cause to be presented a claim to the Medicare Programs for designated health services furnished pursuant to a referral prohibited under the Stark Law.

## "COMPENSATION ARRANGEMENT": DEFINITION

The term "compensation arrangement" means any arrangement involving any remuneration between a physician and a hospital.

## "REMUNERATION": DEFINITION

The term "remuneration" includes any remuneration, directly or indirectly, overtly or covertly, in cash or in kind. Remuneration includes both cash compensation and non-cash benefits.

## "REFERRAL": DEFINITION

A "referral" is defined in the Stark Law as the request by a physician for, or ordering of, or the certifying or recertifying of the need for, any designated health service for which payment may be made under the Medicare Program, including a request for a consultation with another physician and any test or procedure ordered by or to be performed by (or under the supervision of) that other physician, but not including any designated health service personally performed or provided by the referring physician. A "referral" also includes a request by a physician that includes the provision of any designated health service for which payment may be made under the Medicare Program, the establishment of a plan of care by a physician that includes the provision of such a designated health service, or the certifying or recertifying of the need for such a designated health service, but not including any designated health service personally performed or provided by the referring physician.

A designated health service is not personally performed or provided by the referring physician if it is performed or provided by any other person including, but not limited to, the referring physician's employees, independent contractors, or group practice members. Personally performed professional services are things that the doctor does for the patient directly, such as performing surgery, for which the doctor bills a professional fee. Thus, when a physician initiates a designated health service and personally performs it him or herself, that action would not constitute a referral of the service to the hospital.

A physician's personally performed service is distinguished from things that the hospital does for the patient, such as providing a bed, nursing care, drugs, and the equipment in the operating room for which the hospital separately bills Medicare. Those things a hospital does for a patient are called inpatient or outpatient hospital services, and are also sometimes called the "technical component," and the bill the hospital sends to Medicare is sometimes called a "facility fee." In the context of inpatient and outpatient hospital services, there would still be a referral of

any hospital service, technical component, or facility fee billed by the hospital based on patient referrals.

### "REFERRING PHYSICIAN": DEFINITION

A "referring physician" is a physician who makes a "referral" of an item or service for which a hospital can bill Medicare. A "referring physician" also includes a physician who directs another person or entity to make a referral or who controls referrals made by another person or entity. In the case of an item or service for which payment may be made under Medicare, the request by a physician for the item or service, including the request by a physician for a consultation with another physician, and any test or procedure ordered by, or to be performed by or under the supervision of that other physician, constitutes a "referral" by a "referring physician." The request or establishment of a plan of care by a physician that includes the provision of the designated health service also constitutes a "referral" by a "referring physician."

### "ATTENDING PHYSICIAN": DEFINITION

An "attending physician" is the individual who has overall responsibility for the patient's medical care and treatment reported in a claim/encounter.

### "OPERATING PHYSICIAN": DEFINITION

An "operating physician" is the individual with the primary responsibility for performing the surgical procedure.

### INDIRECT COMPENSATION ARRANGEMENT: DEFINITION

An indirect compensation arrangement exists if between the referring physician and the entity furnishing designated health services there exists an unbroken chain of any number (but not fewer than one) of persons or entities that have financial relationships between them. An indirect compensation arrangement means that the referring physician receives aggregate compensation from the entity in the chain with which the physician has a direct financial relationship that varies with, or otherwise takes into account, the volume or value of referrals or other business generated by the referring physician for the entity furnishing services.

In this case, the government contends that the compensation arrangement between Tuomey and the physicians varied with or took into account the physicians' actual or anticipated referrals to Tuomey. If you find that the government has met its burden, then you must find that there is an indirect compensation arrangement between Tuomey and the physicians, and that the Stark Law applies to these contracts.

## INDIRECT COMPENSATION ARRANGEMENT: EXCEPTION

If you find that there are indirect compensation arrangements between Tuomey and the physicians, then you must determine whether Tuomey has proven by a preponderance of the evidence that it falls within the indirect compensation exception to the Stark Law. In order to establish that this exception applies, Tuomey must prove the following:

(1)  that the compensation received by the referring physician is fair market value for services and items actually provided, and

(2)  that the compensation received by the referring physician is not determined in any manner that takes into account the volume or value of the physician's referrals to Tuomey, and

(3)  that the compensation arrangement is commercially reasonable even if no referrals are made to Tuomey.

If you find that Tuomey has met its burden to prove each of these elements, then you must find that Tuomey did not violate the Stark Law.

## BONA FIDE EMPLOYMENT RELATIONSHIP: EXCEPTION

A bona fide employment relationship constitutes an exception to the Stark Law. A physician has a bona fide employment relationship with the employer for the provision of services if--

(A) the employment is for identifiable services,

(B) the amount of the remuneration under the employment--

   (i) is consistent with the fair market value of the services, and

   (ii) is not determined in a manner that takes into account (directly or indirectly) the volume or value of any referrals by the referring physician,

(C) the remuneration is provided pursuant to an agreement which would be commercially reasonable even if no referrals were made to the employer.

Paragraph (B)(ii) does not prohibit the payment of remuneration in the form of a productivity bonus based on services performed personally by the physician.

If you find that Tuomey has met its burden to prove each of these elements, then you must find that Tuomey did not violate the Stark Law.

## "FAIR MARKET VALUE": DEFINITION

"Fair market value" is the value in arm's-length transactions, consistent with the general market value. "General market value" means the price that an asset would bring as the result of bona fide bargaining between well-informed buyers and sellers who are not otherwise in a position to generate business for the other party, or the compensation that would be included in a service agreement as the result of bona fide bargaining between well-informed parties to the agreement who are not otherwise in a position to generate business for the other party, on the date of acquisition of the asset or at the time of the service agreement. Usually, the fair market price is the compensation that has been included in bona fide service agreements with comparable terms at the time of the agreement, and has not been determined in any manner that takes into account the volume or value of anticipated or actual referrals.

## "COMMERCIALLY REASONABLE": DEFINITION

An arrangement is commercially reasonable if the arrangement would make commercial sense if entered into by a reasonable hospital of similar type and size and a reasonable physician of similar scope and specialty, even if there were no potential referrals.

## FALSE CLAIMS ACT

If you find that Tuomey violated the Stark Law and no exception applies, you next must determine whether Tuomey violated the False Claims Act. In order to prove a violation of the False Claims Act, the United States must establish by a preponderance of the evidence that:

(1) Tuomey presented or caused to be presented to Medicare;
(2) false or fraudulent claims for payment; and
(3) Tuomey knew that the claims for payment were false or fraudulent.

## "FALSE": DEFINITION

The government alleges that certain of Tuomey's claims to Medicare for reimbursement were false because Tuomey was in violation of the Stark Law. Claims for services rendered in violation of a statute do not necessarily constitute false or fraudulent claims under the False Claims Act. However, if a defendant has violated a statute that the government has made a condition of payment, such as the Stark Law, then the defendant submits a false or fraudulent claim. For purposes of this case, a claim is false if it was submitted to Medicare in violation of the Stark Law.

## "KNOWING/KNOWINGLY": DEFINITION

For purposes of the False Claims Act, a person knows that a claim is false if the person:

11

      (1) has actual knowledge of the information; or

      (2) acts in deliberate ignorance of the truth or falsity of the information; or

      (3) acts in reckless disregard of the truth or falsity of the information.

### "ACTUAL KNOWLEDGE":  DEFINITION

"Actual knowledge" means affirmative knowledge that claims were false.  It means that Tuomey realized what it was doing and was aware of the nature of its conduct and did not act through ignorance, mistake, or accident.  It is not necessary, however, for the government to prove that Tuomey had a specific intent to defraud.

### "DELIBERATE IGNORANCE":  DEFINITION

The government may prove that Tuomey acted 'knowingly" by proving, by a preponderance of the evidence, that Tuomey deliberately closed its eyes to what would otherwise have been obvious to it.  No one can avoid responsibility by deliberately ignoring what is obvious.  Stated another way, a person's knowledge of a particular fact may be shown from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.  It is, of course, entirely up to you as to whether you find any deliberate ignorance or deliberate closing of the eyes and any inferences to be drawn from any such evidence.  A finding by a preponderance of the evidence that Tuomey avoided knowledge or enlightenment would permit you, the jury, to find knowledge. You may not conclude that Tuomey had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition.

### "RECKLESS DISREGARD":  DEFINITION

I also instruct you that the term "knowingly" includes acting in "reckless disregard" of an act's truth or falsity.  If Tuomey submitted a claim, or caused a claim to be submitted, without properly considering the claim's truth or falsity, Tuomey may be found to have acted in reckless disregard of the claim's truth or falsity.  Reckless disregard is an aggravated form of gross negligence that addresses the refusal to learn of information which an individual, in the exercise of prudent judgment, should have discovered.

### CORPORATE KNOWLEDGE

Tuomey is a corporation.  In order to find that Tuomey took any action knowingly, you must find that at least one individual employee had all of the relevant factual information to satisfy the "knowledge" standard under the False Claims Act.  In this particular case, that means that you would need to find that at least one individual employee of Tuomey knew that Tuomey was submitting claims to Medicare and knew that those claims were false.  It is not necessary that

the person who submitted claims to Medicare on behalf of Tuomey, or caused claims to be submitted to Medicare on behalf of Tuomey, knew that the claims were false.

## AUTHORIZED STATEMENTS OF LAWYERS

Lawyers can be recognized as agents for their clients in litigation and other legal matters. Statements made by a lawyer are considered to be statements of that lawyer's client in dealings with third persons when the client has granted either actual or apparent authority to the lawyer to speak on its behalf or has ratified the statements of the lawyer.

A lawyer's act is considered to be that of a client (that is, "actual authority") in dealings with third persons when:

(1) the client has expressly or impliedly authorized the act;
(2) authority concerning the act is reserved to the lawyer; or
(3) the client ratifies the act.

A lawyer's act is considered to be that of the client (that is, "apparently authority") in dealings with a third person if the tribunal or third person reasonably assumes that the lawyer is authorized to do the act on the basis of the client's (and not the lawyer's) manifestations of such authorization.

If you find that Tuomey granted its lawyers either actual or apparent authority to act as its agents in communicating with third parties, then you must consider statements made by Tuomey's lawyers on behalf of Tuomey as statements of Tuomey itself.

## GOVERNMENT KNOWLEDGE NOT A DEFENSE

Government knowledge is not a defense to a case brought under the False Claims Act. Accordingly, even if you suspect or believe that the government or any agent of the government knew or should have known that Tuomey's claims or cost report certifications were false, Tuomey should still be found liable under the False Claims Act, if you find that Tuomey violated the False Claims Act.

## AFFIRMATIVE DEFENSE: DEFINITION

Tuomey has asserted an affirmative defense of advice of counsel to the government's allegation that it violated the False Claims Act. An affirmative defense is an argument that, if true, will defeat the government's allegations under the False Claims Act. Just as the government has the burden of proving its claims by a preponderance of the evidence, Tuomey has the burden of proving its affirmative defense by a preponderance of the evidence.

13

## ADVICE OF COUNSEL AFFIRMATIVE DEFENSE

In order for Tuomey to prevail on its advice of counsel, defense, it must prove the following:

1. The advice was sought in good faith;
2. The client provided full and accurate information to the attorney;
3. The advice could be reasonably relied upon; and
4. The client faithfully followed the attorney's advice.

Tuomey cannot rely on the advice of counsel defense if Tuomey did not disclose full and accurate information, including all material facts, to its attorneys. If you find that Tuomey avoided its duty to disclose full and accurate information to its attorneys, including all material facts, then you should find that Tuomey cannot prevail on its affirmative defense of advice of counsel. If you find, however, that Tuomey met its burden of proof as to the affirmative defense, then you must return a verdict in favor of Tuomey as to the False Claims Act.

If you find that the government has established the elements of the False Claims Act by a preponderance of the evidence, and that Tuomey has not met its burden of proof as to the affirmative defense, then you must return a verdict for the government, and you then must determine the number and of false claims that Tuomey submitted to the United States.

## DAMAGES UNDER THE FALSE CLAIMS ACT

If you find that Tuomey has violated the False Claims Act, you must then determine the damages sustained by the government because of the violations. The measure of the government's damages under the False Claims Act is the amount of money that the government paid out by reason of the false claims. If Tuomey violated the Stark Law, Tuomey was not allowed to submit claims for payment to Medicare for services that were referred by the physicians whose compensation arrangements violated the Stark Law. And if Tuomey violated the Stark Law, Medicare was not allowed to pay for any services furnished that were referred by the physicians whose compensation arrangements violated the Stark Law. Therefore, your calculation of damages should be based solely on what the Medicare program paid to Tuomey in violation of the Stark Law, if any.

As with all other elements of a False Claims Act violation, the government must prove its damages by a preponderance of the evidence.

The fact that I have instructed you on the proper measure of damages is not an indication of any view of mine as to whether you should find damages for the government. That decision is entirely up to you, based on the guidelines which I have given you.

## THE VALUE AND NUMBER OF CLAIMS PAID BY MEDICARE

If you find that the False Claims Act has been violated, then you must determine the value and the number of the claims for which Tuomey received payment from Medicare. The relevant claims are the claims for inpatient and outpatient hospital services that were referred by the physicians while they had such part time arrangements with Tuomey.

In determining the value and number of improper claims, you must determine which claims were referred by each physician who had a compensation arrangement that violated the Stark Law.

## PRESENTATION OF CLAIMS

A "claim" includes a request by Tuomey for reimbursement from the Medicare program. If you find that Tuomey submitted one or more requests for reimbursement from the Medicare program, then you must consider each such request to be a separate claim. It does not matter if the request for reimbursement was submitted in paper or electronic form; either form constitutes a "claim."

\* \* \*

## DUTY TO DELIBERATE

When you return to the jury room, you should choose a foreperson. The foreperson will preside over the deliberations and speak for the jury here in court.

When you retire to the jury room, you should discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict, but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict. In other words, do not change your opinion solely for the sake of reaching a unanimous verdict.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a

telephone, cell phone, smart phone, iPhone, Blackberry or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube, or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

## RETURN OF VERDICT

After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

## COMMUNICATING WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any members of the jury on anything concerning the case only in writing, or only here in open court. Remember that you are not to tell anyone -- including me -- how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.